IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROSALIND LAWRENCE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:25-CV-2424-N |
| | § | |
| CLEBURNE INDEPENDENT | § | |
| SCHOOL DISTRICT, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant Cleburne Independent School District ("CISD"),

Coby Kirkpatrick, Deanna King, and Elizabeth Childress's (collectively "Defendants")

motion to dismiss [14]. For the reasons stated below, the Court partially grants and

partially denies Defendants' motion to dismiss.

## I. ORIGINS OF THE MOTION

This case arises from Lawrence's employment with CISD. Lawrence is Black and

a woman. Pl.'s Am. Compl. ¶ 5 [11].[1] She was the Girls' Athletic Coordinator and Girls

Varsity Head Coach. *Id*. ¶ 19. Lawrence alleges that, while employed by a CISD high

school, CISD unlawfully discriminated and retaliated against her after she engaged in free

speech opposing discrimination in the workplace. *Id*. ¶¶ 1–7. Kirkpatrick is CISD's

superintendent, and King and Childress are both members of CISD's Board of Trustees.

*Id*. ¶¶ 13, 15–16.

---

[1] For purposes of this Order, the Court accepts Lawrence's well-pleaded allegations as true.

MEMORANDUM OPINION AND ORDER – PAGE 1

Beginning in 2023, Defendants treated Lawrence differently than non-Black and male employees who had not engaged in free speech opposing discrimination in the workplace, including demoting and humiliating her. *Id*. ¶¶ 6, 66–82. Lawrence asserts five claims under Title VII of the Civil Rights Act of 1964 and section 1983. *See generally* Pl.'s Am. Compl.

Lawrence claims the basis for her opposition to Defendants' alleged unlawful conduct began in 2021. Over the course of a year, several white teachers and coaches made racially offensive comments against students of color, made sexually inappropriate comments about female students, and inappropriately touched female students. *Id*. ¶ 47. She alleges that CISD handled an allegation against a Black male coach differently and worse than white male coaches or teachers accused of similar or worse conduct. *Id*. ¶ 48. Lawrence alleges that while Defendants took "little to no action" against the white males, Defendants took action against the Black male and Defendants had disparate investigation efforts.

In 2022, Lawrence openly complained about these racially disparate responses, made presentations to administrations, and complained to management and the Board of Trustees. *Id*. ¶¶ 50–52. However, CISD refused to take action. *Id*. ¶¶ 54–60. Instead, CISD conducted irrelevant training on economic disparities. *Id*.

In 2023, Defendants escalated their hostility by threating to fire Lawrence's former supervisor if her supervisor did not fire her. *Id*. ¶¶ 61–64. King told the supervisor that Lawrence was not appropriate to coach within CISD because Lawrence is Black. *Id*. ¶ 65. Defendants demoted the supervisor and the supervisor ultimately resigned. *Id*. ¶ 68.

MEMORANDUM OPINION AND ORDER – PAGE 2

Subsequently, CISD hired a new supervisor, Jimmy Hestand, and a new superintendent, Kirkpatrick. *Id*. ¶ 78. Additionally, King and Childress complained to Hestand about Lawrence's previous verbal opposition to race discrimination within CISD. *Id*. ¶ 84. Prior to King and Childress's complaints, Lawrence received all positive performance reviews. *Id*. ¶¶ 77, 94.

In the Fall of 2023, CISD removed Lawrence from CISD's monthly athletics' upper management administrative and organizational meetings. *Id*. ¶ 74. Then, before May 2024, CISD and Kirkpatrick demoted Lawrence from both her positions. *Id*. ¶ 38. Defendants forced Lawrence to use a different office next to the girls' locker room for over two months. *Id*. ¶ 44. This was different from how CISD treated a white male coach under similar circumstances, and forced Lawrence to endure stares, gossip, and served as a reminder that she lacked authority and prestige. *Id*. ¶¶ 44–45. Finally, Lawrence alleges that Defendants did not follow their normal policies and procedures with respect to her demotion. Lawrence claims that Defendants circumvented CISD policy based on fictional complaints and took action without providing her an opportunity to respond, notice, or a chance to improve. *Id*. ¶ 85.

Defendants now move to dismiss all Lawrence's claims.

## II. RULE 12(B)(6) LEGAL STANDARD

When deciding a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S.

MEMORANDUM OPINION AND ORDER – PAGE 3

544, 570 (2007).  To meet this "facial plausibility" standard, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff.  *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012).  But a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* (citations omitted).  In ruling on a Rule 12(b)(6) motion, a court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff.  *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

### III.  LAWRENCE STATES A PLAUSIBLE TITLE VII CLAIM

Title VII makes it unlawful "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e–2(a)(1).

There are two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: (1) an "adverse employment action," (2) taken against a plaintiff "*because of* her protected status."  *Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (emphasis in original).  At the motion to dismiss stage, "a

MEMORANDUM OPINION AND ORDER – PAGE 4

plaintiff need not submit evidence to establish the prima facie case for discrimination." *Davis v. Tex. Health & Hum. Servs. Comm'n*, 761 F. App'x 451, 454 (5th Cir. 2019) (unpub. per curiam) (citing *Chhim v. Univ. of Tex.*, 836 F.3d 467, 470 (5th Cir. 2016) (per curiam)).

Defendants argue only that Lawrence failed to allege sufficient facts to establish that any adverse action was taken against Lawrence "because of" Lawrence's protected class. Def.'s Mot. Br. 9. However, Lawrence "need not make out a prima facie case of discrimination under *McDonnell Douglas*" at the pleadings stage. *Cicalese*, 924 F.3d at 766. At this stage, Lawrence's claims are at least plausible. To satisfy the "because of" prong Lawrence must show others "similarly situated" but outside the protected class were treated more favorably through comparators. *See Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009).

Lawrence has identified plausible comparators and sufficiently these comparators engaged in "same, similar, or worse conduct." At this stage, a court not "inappropriately heighten[ ] the pleading standard by subjecting a plaintiff's allegations to a rigorous factual or evidentiary analysis under *McDonnell Douglas*." *Cicalese*, 924 F.3d at 767 (5th Cir. 2019) (alteration in original).

Lawrence alleges that CISD pursued "pretextual retaliatory allegations against" her because of her race and or her gender. Pl.'s Am. Compl. ¶ 86. Specifically, Lawrence alleges that white or white male coaches and teachers used racially or sexually inappropriate language, but Defendants did not discipline them. *Id*. ¶ 47. Similarly, Lawrence alleges Kirkpatrick removed Lawrence, among other reasons, for "blunt

MEMORANDUM OPINION AND ORDER – PAGE 5

language." *Id*. 39. These allegations are sufficient at this stage. *Cf. Olivarez v. T-mobile USA, Inc.*, 997 F.3d 595, 600 (5th Cir. 2021) (holding a complaint failed to state a plausible claim when "there is no allegation that any non-transgender employee with a similar job and supervisor and who engaged in the same conduct as [plaintiff] received more favorable treatment").

For comparators to share "nearly identical circumstances" with Lawrence, she must show that the comparators "held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Lee v. Ks. City So. Rwy. Co.*, 574 F.3d 253, 260 (5th Cir. 2009). The complaint alleges CISD handled complaints against "white male teachers and coaches" differently and provided examples of how white male coaches were treated in comparison to her. In two instances, Kirkpatrick followed CISD policies when there were parental complaints being made against a white male coach and a white male teacher. *Id*. ¶ 37. Kirkpatrick did not here. And, in contrast to Lawrence, when CISD demoted a white male coach, CISD immediately assigned him an office in the Central Office building so he did not interact with students and staff. *Id*. ¶ 45.

This is sufficient to plausibly suggest intentional race and gender discrimination. *See Thornton v. Univ. of Texas Sw. Med. Ctr. Sch. of Med.*, 2025 WL 619166, at *3 (5th Cir. 2025) (unpub.) (affirming dismissal when "a complaint failed to plead any facts that would permit a reasonable inference that [plaintiff] was terminated because of [his protected] identity") (internal quotations omitted); *cf. Lewis v. City of Dallas*, 2016 WL 11474104, at *4 (N.D. Tex. 2016) ("A bare-bones allegation that the [Defendant] treated

MEMORANDUM OPINION AND ORDER – PAGE 6

[Plaintiff] less favorably than similarly situated nonblack employees will not suffice."). Accordingly, the Court denies Defendants' motion to dismiss Lawrence's Title VII discrimination claims.

### V. LAWRENCE FAILS TO PLEAD A TITLE VII RETALIATION CLAIM

The Court concludes that Lawrence establishes a claim for retaliation. To state a claim for retaliation in violation of Title VII, a plaintiff must allege that "(1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action." *McCoy v. City of Shreveport,* 492 F.3d 551, 556–57 (5th Cir. 2007) (citations omitted). Protected activity under Title VII can take one of two broader forms: (1) opposing an unlawful employment practice; or (2) making a charge, testifying, assisting, or participating in a Title VII investigation, proceeding, or hearing. *Byers v. Dallas Morning News*, 209 F.3d 419, 427–28 (5th Cir. 2000).

"Protected activity is defined as opposition to any practice rendered unlawful by Title VII . . . ." *Ackel v. Nat'l Commc'ns, Inc.,* 339 F.3d 376, 385 (5th Cir. 2003) (internal quotation marks omitted). To satisfy this opposition requirement, [a plaintiff] need only show that she had a reasonable belief that the employer was engaged in unlawful employment practices." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007) (internal citation omitted). Lawrence alleges she participated in protected activity twice.

First, Lawrence alleges that she "began openly complaining about the racially disparate responses by CISD to [racially and sexually offensive] incidents." Pl.'s Am.

MEMORANDUM OPINION AND ORDER – PAGE 7

Compl. ¶¶ 49–50.  This "included making a presentation to administration explaining the racially disparate responses and how CISD needed to change."  *Id*. ¶ 51.

Second, Lawrence alleges she spoke separately with King and Childress about a CISD training on economic disparities.  *Id*. ¶ 56.  Lawrence stated that she told King and Childress "the trainings were a failure since they did not address the racial discrimination issues that had been the source of the problems and her complaints."  *Id*. ¶ 57.

Lawrence's allegations regarding her reasonable belief that Defendants were engaged in unlawful employment practices are too conclusory.  Lawrence alleges she opposed CISD not abiding by policies and practices based on race and gender when its employees engaged in misconduct.  Pl.'s Am. Compl. ¶ 81.  This misconduct includes white females referring to Black students as "monkeys" or the N-word, a white male teacher engaging in sexual misconduct and using racially offensive language towards Hispanic students, and male teachers engaged in sexually inappropriate conduct with female students.  *Id*. ¶ 47.

She alleges that CISD handled an allegation against a Black male coach differently and worse than white male coaches or teachers accused of "same, similar, or worse conduct."  *Id*. ¶ 48.  Lawrence provides no further details about the type of "similar" conduct or the allegation against the Black male.  Thus, Lawrence fails to plead facts supporting a reasonable belief that Defendants engaged in unlawful employment practices. *See Chhim*, 836 F.3d at 470–71 (holding a court cannot "draw [a] reasonable inference" based on assumptions); *e.g.*, *Nunez-Renck v. Int'l Bus. Machines Corp*., 2024 WL 1495787, at *5 (N.D. Tex. 2024) (dismissing a retaliation claim for failure to provide sufficient

MEMORANDUM OPINION AND ORDER – PAGE 8

factual allegations to substantiate plaintiff's assertion that she engaged in protected activity).

However, Lawrence plausibly alleges that she suffered an adverse employment action. *Burlington N. & S. F. R. Co. v. White*, 548 U.S. 53, 68 (2006). Lawrence alleges Defendants demoted her and that she suffered a "reduction in pay, reduction in authority, elimination from athletics, [and] submission to daily humiliation." Pl.'s Am. Compl. ¶¶ 44–46, 74 89. These actions would reasonably dissuade a reasonable employee from reporting discrimination. *E.g.*, *Hamilton v. Dallas Cnty.*, 79 F.4th 494, 501 (5th Cir. 2023) (en banc) ("Title VII plaintiff may recover damages even for "discrimination in the 'terms, conditions, or privileges of employment' " that "did not involve a discharge," "loss of pay," or other "concrete effect on [his or her] employment status.")

Lawrence also plausibly alleges causal connection. Lawrence alleges Defendants told Lawrence's prior supervisor, Jeri Hall, to remove Lawrence from her position in response to Lawrence's protected activity. *Id*. ¶ 64. The assistant superintendent of CISD threatened to remove Hall if she did not "get rid of Lawrence." *Id*. ¶ 62–63. When Hall refused, Defendants demoted Hall. *Id*. ¶ 68. CISD hired a new supervisor and superintendent, Kirkpatrick, who learned about Lawrence's speech from King and Childress. *Id*. ¶ 78. Defendants then took adverse action. *Id*. ¶ 74–80. These facts state a

MEMORANDUM OPINION AND ORDER – PAGE 9

plausible connection between Lawrence's opposition and the alleged retaliation. *Cf. Norsworthy v. Hous. Indep. Sch. Dist.*, 70 F.4th 332, 336 (5th Cir. 2023).

The Court grants Defendants' motion to dismiss Lawrence's Title VII retaliation claim because she fails to plead facts supporting a reasonable belief Defendants engaged in misconduct under Title VII.

### VI. LAWRENCE STATES A PLAUSIBLE SECTION 1983 EQUAL PROTECTION CLAIM

Lawrence alleges an Equal Protection claim under section 1983, and Defendants assert at the threshold that Lawrence has failed to plead a claim. Secondarily, Defendants argue Kirkpatrick, King, and Childress are entitled to qualified immunity.

### A.  Lawrence Alleges a Plausible Equal Protection Claim

"To state a claim under the Equal Protection Clause, a [section] 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999). Thus, a plaintiff must demonstrate that he or she has been treated differently due to membership in a protected class and that the unequal treatment stemmed from a discriminatory intent. *See Hampton Co. Nat'l Sur., LLC v. Tunica County*, 543 F.3d 221, 228 (5th Cir. 2008).

"Discriminatory [intent] implies that the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group." *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001) (internal alterations omitted). A plaintiff does not need to establish a prima facie case of discrimination at the pleading stage. *Raj v. La. State Univ.*,

MEMORANDUM OPINION AND ORDER – PAGE 10

714 F.3d 322, 331 (5th Cir. 2013).  But a plaintiff must plead "sufficient facts on all of the ultimate elements of a disparate treatment claim to make his case plausible."  *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016).  Section 1983 and Title VII are "parallel causes of action" and the "inquiry into intentional discrimination is essentially the same . . . ." *Lauderdale v. Texas Dep't of Crim. Just.*, 512 F.3d 157, 166 (5th Cir. 2007).

Here, Lawrence's amended complaint contains specific facts of each Individual Defendant's actions.  *Coleman v. Franklin Par. Sch. Bd.*, 702 F.2d 74, 77 (5th Cir. 1983).  Lawrence also "plead[ed] that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Lawrence's allegations about Kirkpatrick are sufficient to establish a claim under section 1983.  "Discriminatory intent may be proven (among other ways) by departures from procedural norms, a history of discrimination against others similarly situated, or by circumstantial evidence, such as a pattern of conduct inexplicable on grounds other than race." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 265–66 (1977).  Here, Lawrence alleges Kirkpatrick took actions against her in violation of CISD policies.  Kirkpatrick's actions were also disparate from actions taken against white employees for the same or worse conduct than that alleged against Lawrence.  Pl.'s Am. Compl. ¶¶ 22–42, 45, 79, 92.  This is sufficient at the pleadings stage to show that Kirkpatrick took adverse action against Lawrence because of her race.  *See also Gallegos-Hernandez v. United States*, 688 F.3d 190, 195 (5th Cir. 2012) ("To establish an equal protection claim, [a plaintiff] must show that two or more classifications of similarly situated persons were

MEMORANDUM OPINION AND ORDER – PAGE 11

treated differently."). Accordingly, the Court denies Defendants' motion to dismiss Lawrence's section 1983 claim against Kirkpatrick.

Taking Lawrence's allegations as true, King and Childress did not treat Lawrence the same as other teachers and coaches because of her race. *See Mercado Azteca, L.L.C. v. City of Dallas*, 2004 WL 2058791, at *6 (N.D. Tex. 2004). As explained above, Lawrence openly complained about racial discrimination in 2022. *E.g.*, Pl.'s Am. Compl. ¶¶ 49–50 . Subsequently, King and Childress both said that Lawrence was not suitable to coach the girls' team because she is Black. *Id.*¶ 26. They then pressured Kirkpatrick, as superintendent, to demote Lawrence using those racially discriminatory statements. *Id.* . ¶¶ 80, 84. Thus, the Court denies Defendants' motion to dismiss Lawrence's Equal Protection claim against King and Childress. *See Staub v. Proctor Hosp.*, 562 U.S. 411, 422-423 (2011) (holding the defendant liable if she "performs an act motivated by [discriminatory] animus that is *intended* . . . to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action").

### B.      *The Individual Defendants are Not Entitled to Qualified Immunity*

"Qualified immunity is a defense available to public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known.'" *Noyola v. Tex. Dep't of Human Res.*, 846 F.2d 1021, 1024 (5th Cir. 1988) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The doctrine of qualified immunity balances two interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability

MEMORANDUM OPINION AND ORDER – PAGE 12

when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Because "qualified immunity is designed to shield from civil liability 'all but the plainly incompetent or those who knowingly violate the law,'" denial of qualified immunity is appropriate only in rare circumstances. *Brady v. Fort Bend Cnty.*, 58 F.3d 173, 173–74 (5th Cir. 1995) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

In this case, Kirkpatrick, King, and Childress have properly raised qualified immunity. Although qualified immunity is an affirmative defense, defendants may raise it in a motion to dismiss for failure to state a claim. *See, e.g.*, *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009).

Thus, the Court must assess Lawrence's section 1983 claims to determine (1) whether he has shown a violation of a constitutional right, and if so, (2) whether that right was "clearly established" at the time of the public official's alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). At the motion to dismiss stage, "it is the defendant's conduct as alleged in the complaint that is scrutinized for 'objective legal reasonableness.'" *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam) (citing *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)).

*1.    Kirkpatrick is Not Entitled to Qualified Immunity.* — As explained above, to state a claim racial Equal Protection claim the plaintiff "must allege and prove that he received treatment different from that received by similarly situated individuals" and "discriminatory intent." *Priester v. Lowndes Cnty.*, 354 F.3d 414, 424 (citation omitted). The same conduct detailed earlier applies here. Lawrence has alleged that she received unequal treatment — that Kirkpatrick manufactured parent complaints and embarrassed

MEMORANDUM OPINION AND ORDER – PAGE 13

her in front of her colleagues and students — and that she received this treatment because she is Black.  Pl.'s Am. Compl. ¶¶ 37, 45.

These allegations, if true, could support a finding that Kirkpatrick violated Lawrence's equal-protection rights.  *See Jackson v. Duff*, 161 F.4th 343, 349 (5th Cir. 2025) ("Thus, generally, where the [pleading] is sufficient to support a claim of intentional gender or race discrimination, any immunity defense will be foreclosed."); *Taylor v. Ways*, 999 F.3d 481 (7th Cir. 2021) (denying qualified immunity because "any public employee . . . would have known he could not act on the basis of racial animus"); *Foster v. Echols Cnty. Sch. Dist.*, 169 F.4th 1291, 1301 (11th Cir. 2026) (holding that "every reasonable official would have understood [deep-seated racial animus] to be unlawful").

A defendant would still be entitled to qualified immunity if he acted reasonably "in light of clearly established law at the time of the violation."  *Terry v. Hubert*, 609 F.3d 757, 761 (5th Cir. 2010).  It was clearly established at the time of the alleged violation that the Equal Protection Clause of the Fourteenth Amendment prohibits racial discrimination.  *See, e.g.*, *Bowlby v. City of Aberdeen*, 681 F.3d 215, 227 (5th Cir. 2012) ("[T]he main purpose of the Equal Protection Clause is to prevent official conduct that discriminates on the basis of race.") (citing *Washington v. Davis*, 426 U.S. 229, 239 (1976)).

It was also clearly established that the Equal Protection Clause's prohibition of racial discrimination extends to government employees.  *See, e.g.*, *Blackwell v. Laque*, 275 F. App'x 363, 367–68 (5th Cir. 2008) (unpub.) (denying immunity to defendant who allegedly terminated Black employees based on race because it was clearly established that the Equal Protection Clause prohibited racial discrimination); *Holden v. Knight*, 155 F.

MEMORANDUM OPINION AND ORDER – PAGE 14

App'x 735, 741 (5th Cir. 2005) (unpub.) (holding qualified immunity did not apply because allegations of racial animus and policy deviations, "if true, show that the defendants' conduct was not objectively reasonable"). A reasonable person would have known it was unconstitutional to act with racially discriminatory intent and demote and embarrass an employee. Accordingly, Kirkpatrick is not entitled to qualified immunity, and Defendants' motion to dismiss is denied as to this claim. *See Anderson*, 483 U.S. at 638.

2.    ***King is Not Entitled to Qualified Immunity.*** — Lawrence's allegations also support a finding that Kirk violated her constitutional rights: she has (1) alleged that King complained to Kirkpatrick about Lawrence's opposition and exerted pressure on Kirkpatrick to remove Lawrence from her position; and (2) alleged that King acted with discriminatory intent, such as when she stated Lawrence was not suited to coach for CISD because she is Black. Pl.'s Am. Compl. ¶¶ 65, 78, 83–84. Moreover, as described above, it was clearly established at the time of the alleged violation that it was unconstitutional for a person with oversight to intentionally discriminate against an employee based on her race. *See Fennell v. Marion Indep. Sch. Dist.*, 963 F. Supp. 2d 623, 637 (W.D. Tex. 2013). Because Lawrence's allegations establish that King violated a clearly established constitutional right, King is not entitled to qualified immunity and Defendants' motion to dismiss is denied as to this claim.

3.    ***Childress is Not Entitled to Qualified Immunity.*** — Lawrence has also pleaded that Childress committed a constitutional violation. Lawrence has (1) alleged that Childress worked with King to pressure Kirkpatrick to remove Lawrence from Lawrence's position; and (2) alleged that Childress did so by "poisoning Kirkpatrick against Lawrence

MEMORANDUM OPINION AND ORDER – PAGE 15

with racially discriminatory statements." Pl.'s Am. Compl. ¶¶ 83–84. As recited above, these actions violated a clearly established constitutional right. And, if proven, Lawrence's facts could support the inference that Childress acted with discriminatory intent. Thus, Childress is not entitled to qualified immunity and Defendants' motion to dismiss is denied as to this claim.

## VII. LAWRENCE PLEADS A PLAUSIBLE SECTION 1983 FREE SPEECH CLAIM

Lawrence alleges a First Amendment retaliation claim under section 1983. Defendants assert at the threshold that Lawrence has failed to plead facts supporting each element of a First Amendment claim. Secondarily, Defendants argue they are entitled to qualified immunity.

### A. Lawrence Adequately Pleads a First Amendment Violation

To "establish a [section] 1983 claim for employment retaliation related to speech, a plaintiff-employee must show: (1) he suffered an adverse employment action; (2) he spoke as a citizen on a matter of public concern; (3) his interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action." *Lowery v. Mills*, 157 F.4th 729, 743 (5th Cir. 2025). The parties do not dispute that Defendants were acting under color of state law. Thus, the Court addresses the remaining elements.

Lawrence sufficiently alleges she spoke as a citizen on a matter of public concern. "Speech made pursuant to a public employee's official duties is generally not protected." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). *Garcetti* also considers "the role the speaker occupied when he said it." 547 U.S. at 1960. However, "[t]o hold that any

MEMORANDUM OPINION AND ORDER – PAGE 16

employee's speech is not protected merely because it concerns facts that he happened to learn while at work would severely undercut First Amendment rights." *Charles v. Grief*, 522 F.3d 508, 513 (5th Cir. 2008).

Here, Lawrence was not speaking pursuant to her official duties as a basketball coach or athletic director. Her duties did not "require" her to assess whether teachers and coaches used "inappropriate language (cursing and sexual comments), racially offensive comments," or sexually "touch[ed]" female students. Pl.'s Am. Compl. ¶ 47; *cf. Williams v. Dall. Indep. Sch. Dist.*, 480 F.3d 689, 694 (5th Cir. 2007) (concluding that the athletic director's speech concerned the fulfillment of his daily operations, namely budgeting for various athletic department expenses). Although part of Lawrence's speech was to her supervisors, namely the administration and Board of Trustees, this is not dispositive at the pleadings stage. *See Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 224 (5th Cir. 1999) ("While employee speech cases are a likely vehicle for varied fact scenarios, the law is clearly established that a mix of public and private speech may be constitutionally protected."). Additionally, Lawrence alleged she "openly complained," which plausibly includes non-supervisor persons. Pl.'s Am. Compl. ¶ 50. Lawrence's allegations allow the Court to reasonably infer that she spoke as a citizen on a matter of public concern.

Lawrence sufficiently alleged she suffered an adverse employment action under the First Amendment's different retaliation standard. "Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands," but does not include "mere accusations or criticism," "investigations," and "false accusations." *Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999). "To be equivalent to a demotion, a

MEMORANDUM OPINION AND ORDER – PAGE 17

transfer need not result in a decrease in pay, title, or grade; it can be a demotion if the new position proves objectively worse — such as being less prestigious or less interesting or providing less room for advancement." *Id*. Here, Lawrence alleges Defendants demoted her and that she suffered a "reduction in pay, reduction in authority, elimination from athletics, [and] submission to daily humiliation." Pl.'s Am. Compl. ¶¶ 44–46, 74 89. This is sufficient to establish that Defendants took adverse action against Lawrence.[2]

Lawrence sufficiently alleges that her speech precipitated the adverse employment action. Her complaints and presentations occurred before the alleged adverse actions against her. *See* Pl.'s Am. Compl. ¶ 80. Lawrence received only positive performance reviews prior to her speech. *Id*. ¶ 79. And, Lawrence alleges that Defendants knew of her speech. *Id*. As explained above, Lawrence alleges sufficient causal connection. In sum, Defendants told Lawrence's prior supervisor to remove her based on her speech. *Id*. ¶ 64. Defendants hired a new supervisor and superintendent who complied and took adverse action. *Id*. ¶¶ 74–80. These facts sufficiently plead that Lawrence's speech was the "but-for" cause of Defendants' alleged retaliation. *See Anderson v. Valdez*, 845 F.3d 580, 592 (5th Cir. 2016) (citing *Cox v. Kaelin*, 577 F. App'x 306, 312 (5th Cir. 2014) ([Plaintiff] pleads that his[speech] "known," and thus it is plausible that his [speech] motivated his eventual termination.").

### B. Individual Defendants are Not Entitled to Qualified Immunity

---

[2] Even if this was a mere "reassignment" as Defendants argue it is, the Fifth Circuit has held that "an adverse employment action can include a transfer, because it may serve as a demotion." Def.'s Mot. Br. 7; *Sharp*, 164 F.3d at 933; *cf. Alvarado v. Texas Rangers*, 492 F.3d 605, 613 (5th Cir. 2007), *abrogated on other grounds by Hamilton*, 79 F.4th at 506.

Defendants assert they are entitled to qualified immunity.  They argue Lawrence's First Amendment right, given the circumstances, was not clearly established.  *See* Defs.' Mot. 7–8.  The Court determines that it was clearly established that the First Amendment protected Lawrence's speech about matters of public concern.

"It is well established that the First Amendment places certain constraints upon dismissals from public employment based upon political affiliation and speech." *Brady v. Fort Bend Cnty.,* 145 F.3d 691, 704 (5th Cir.1998).  "A !state may not discharge an employee for exercising [her] right to free speech on matters of public concern." *Page v. DeLaune,* 837 F.2d 233, 237 (5th Cir.1988) (alteration in original) (finding sufficient evidence for trial in favor of a school staff member alleging a First Amendment claim based on her political speech).

There is ample case law protecting Lawrence's right to speak about misconduct, including sexual misconduct, and to criticize her supervisors.  *E.g.*, *Pickering v. Board of Ed.*, 391 U.S. 391 U.S. 563, 573–75 (1968) (holding a public school teacher's right to speak on matters of public importance may not furnish the basis for his dismissal from public employment); *Givhan v. W. Line Consolid. Sch. Dist.*, 439 U.S. 410, 411–14 (1979) (affirming a public employee's right to private expression to employer of views on school district's racial policies); *Wilson v. UT Health Center*, 973 F.2d 1263, 1269 (5th Cir. 1992) (holding that reporting sexual harassment by superiors is protected speech); *Denton v. Morgan*, 136 F.3d 1038, 1043 (5th Cir. 1998) ("[S]peech reporting official misconduct, wrongdoing, or malfeasance on the part of public officials involves matters of public concern.")

MEMORANDUM OPINION AND ORDER – PAGE 19

Thus, Defendants are not entitled to qualified immunity.  Accordingly, the Court denies Defendants' motion to dismiss Lawrence's section 1983 free speech claim.

### CONCLUSION

Because Lawrence fails to plead allegations supporting a reasonable belief Defendants engaged in unlawful employment activity, Lawrence fails to state a plausible claim for Title VII retaliation.  The Court grants Lawrence leave to amend her Title VII retaliation claim.  If Lawrence does not file her amended Title VII retaliation claim within 30 days, the Court will dismiss Lawrence's retaliation claim with prejudice without further notice.  Finally, for the foregoing reasons, the Court denies Defendants' motion to dismiss Lawrence's remaining claims for Title VII discrimination and section 1983 violations.

Signed June 15, 2026.

David C. Godbey
Senior United States District Judge

MEMORANDUM OPINION AND ORDER – PAGE 20