IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROSALIND LAWRENCE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:25-CV-2424-N |
| | § | |
| CLEBURNE INDEPENDENT SCHOOL DISTRICT, *et al.*, | § | |
| | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

This Order addresses Defendant Cleburne Independent School District ("CISD"), Coby Kirkpatrick, Deanna King, and Elizabeth Childress's (collectively, "Defendants") motion for summary judgment [35] and motion to strike Plaintiff's summary judgment evidence [44]. For the following reasons**,** the Court grants in part and denies in part Defendants' motion to strike. Additionally, because there is no genuine issue of material fact, the Court grants Defendants' motion for summary judgment.

## I. ORIGINS OF THE MOTION

This case arises from Plaintiff Rosalind Lawrence's employment with CISD. Lawrence is an African American female who was the Girls' Athletic Coordinator and Girls' Varsity Basketball Head Coach. Defs.' Motion for Summary Judgment ("MSJ") App. 26 [37]. Lawrence alleges that, while employed by a CISD high school, CISD unlawfully discriminated and retaliated against her after she engaged in free-speech

opposing discrimination and sexually inappropriate comments in the workplace. Pl.'s Resp. MSJ App. 36–41 [40].

Lawrence claims that because of the concerns she raised, she was demoted from her positions as a head coach and athletic coordinator. Pl.'s Resp. MSJ 23 [38]. She alleges she was treated differently than non African American employees and male employees who had not engaged in speech opposing the offensive and derogatory behavior within CISD. Pl.'s Resp. MSJ App. 34, 79–82, 121–26, 143–45.

In her Third Amended Complaint, Lawrence brings five claims under Title VII of the Civil Rights Act of 1964 and section 1983. *See generally* Pl.'s Third Am. Compl. [32]. The Title VII claims are against CISD while the section 1983 claims are against CISD's superintendent Coby Kirkpatrick and members of CISD's Board of Trustees, Deanna King and Elizabeth Childress. Defendants now move for summary judgment on all of Lawrence's claims.

## II. THE COURT GRANTS IN PART AND DENIES IN PART THE MOTION TO STRIKE

Before reaching the merits, the Court addresses Defendants' evidentiary objections. Defendants move to strike: (1) the Hall Declaration because Defendants argue it is inherently inconsistent with Hall's deposition testimony, rests on hearsay, and involves matters outside Hall's personal knowledge; (2) the meeting recordings and transcripts because they are unauthenticated and hearsay; (3) and the Blackshear, Gonzalez, Jordan, and Woodard declarations as conclusory, lacking foundation, and untimely. Defs.' Mot. to Strike 1, 3 [44]. The Court will address each objection in turn.

### *A. The Court Denies Defendants' Motion to Strike the Hall Declaration*

Declarations are proper summary judgment evidence under Federal Rule of Civil Procedure 56(c). Under Rule 56, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2). District courts may strike declarations that do not comply with Rule 56's standard. *Akin v. Q-L Invs., Inc.*, 959 F.2d 521, 530 (5th Cir. 1992). Defendants argue that the Court must strike the Hall Declaration because it contradicts Hall's sworn deposition testimony. Defs.' Mot. to Strike 5. Additionally, they state the Declaration rests on hearsay and matters outside Hall's personal knowledge. *Id.* Respectfully, the Court disagrees.

***1. Hall's Declaration is Not Inherently Inconsistent With Her Deposition Testimony.*** **–** At the summary judgment phase, "a district court must consider all the evidence before it and cannot disregard a party's affidavit merely because it conflicts to some degree with an earlier deposition." *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 893 (5th Cir. 1980). "The 'sham affidavit doctrine' is an exception to this rule that allows a district court to disregard 'statements made in an affidavit that are so markedly inconsistent with a prior statement as to constitute an obvious sham.'" *Rodriguez v. City of Corpus Christi*, 129 F.4th 890, 897 (5th Cir. 2025) (internal quotation marks omitted) (quoting *Winzer v. Kaufman Cnty*, 916 F.3d 464, 473 (5th Cir. 2019)). "[T]he bar for applying the doctrine is a high one, typically requiring affidavit testimony that is 'inherently inconsistent' with prior testimony." *Seigler v. Wal-Mart Stores Texas, L.L.C.*, 30 F.4th 472, 477 (5th Cir. 2022) (quoting *Winzer*, 916 F.3d at 472).

Defendants argue that the "Declaration and Hall's sworn testimony diverge point after point." Defs.' Mot. to Strike 5. However, the Court declines to strike Hall's Declaration as a sham affidavit. While the distinctions Defendants identify in their motion involve clarifying testimony that varies to a degree that might "disclose an issue of credibility," the statements are not so remarkedly contradictory as to constitute an obvious sham. *See Kennett-Murray Corp*, 622 F.2d at 893 ("An opposing party's affidavit should be considered although it differs from or varies his evidence as given by deposition or another affidavit and the two in conjunction may disclose an issue of credibility.") (internal quotation marks omitted). Accordingly, the Court denies Defendants' motion to strike this declaration.

***2. Hall's Declaration Is Based on Personal Knowledge and Not Hearsay.*** **–** Rule 56 states that an "affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4). Defendants claim that Hall's Declaration rests on hearsay and rests on knowledge she could not personally have. Defs.' Mot. to Strike 7–8. Specifically, Defendants take issue with Hall referencing statements made by other CISD staff. *Id.* These statements, Defendants argue, are hearsay falling outside any exception and contain information that Hall could not have personal knowledge of.

After reviewing Hall's Declaration and Defendants' objections, the Court finds that the Declaration is based upon Hall's personal knowledge and does not contain hearsay. First, Hall's Declaration establishes an adequate basis for her knowledge. For example,

Hall attests that she worked for CISD as both an assistant principal and athletic director. *See* Pl.'s Resp. MSJ App. 121. A district court may reasonably infer personal knowledge based on a person's employment position and "sphere of responsibility." *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 530 (5th Cir. 2005). Here, because Hall presented evidence regarding her management position within CISD and relationship with other employees, the Court finds that Hall established that she has personal knowledge of the matters within her Declaration.

Additionally, Defendants seek to strike the statements made by other CISD staff as inadmissible hearsay statements upon which the Court cannot rely in resolving the motion for summary judgment. Defs.' Mot. to Strike 7–8. An affidavit cannot rest on inadmissible hearsay. Defendants argue that Hall's declaration rests on hearsay because it includes statements made by other CISD employees. *Id.* However, as Lawrence correctly points out, most of these statements are made either by one of the Defendants, by one of CISD's employees on a matter within their employment, or is not being offered for the truth of the matter asserted but rather to show the reaction the statements elicited from Defendants. Pl.'s Resp. Mot. to Strike 14–15, 19–22 [48]. Because these statements qualify as nonhearsay, the Court declines to strike these parts of Hall's Declaration. *See* FED. R. EVID. 801(c)(2), 801(2)(D).

### *B. The Court Grants Defendants' Motion to Strike the Meeting Recordings and Transcripts*

Defendants next move to strike the three meeting recordings and their respective transcripts on the grounds that they were not timely produced, are unauthenticated, and

contain inadmissible hearsay. Defs.' Mot. to Strike 4, 9–10. The Court agrees that this material must be excluded as untimely.

If a party fails to disclose information or a witness as required under Federal Rule of Civil Procedure 26(a) or (e), the party "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). Whether a late disclosure is substantially justified or harmless rests in the Court's discretion and turns on four factors: (1) the party's explanation for the failure, (2) the importance of the evidence, (3) the prejudice to the opposing party, and (4) the availability of a continuance. *CQ, Inc. v. TXU Min. Co., L.P.*, 565 F.3d 268, 279 (5th Cir. 2009). Lawrence concedes she provided the recordings and their transcripts for the first time via her response appendix to Defendants' motion for summary judgment. *See* Pl.'s Resp. Mot. to Strike 4 ("Lawrence mistakenly withheld the recordings for use as impeachment evidence, however, Lawrence now understands that impeachment is not a sufficient or satisfactory answer to justify withholding those recordings."). Because Lawrence does not offer a reasonable explanation for withholding this evidence, Lawrence has not shown its late disclosure was substantially justified. Accordingly, the prejudice to Defendants of having to respond on summary judgment to evidence they have never seen warrants striking the three meeting transcripts and their recordings.

### *C. The Court Declines to Strike the Blackshear, Gonzalez, Jordan, and Woodard Declarations*

Finally, Defendants move to strike the declarations of Blackshear, Gonzales, Jordan, and Woodard. Defendants argue that these declarations were untimely produced, rest on hearsay, and lack personal knowledge. Def.'s Mot. to Strike 3–4, 10. The Court respectfully disagrees.

The declarations of Jordan and Woodard are not untimely because these individuals were identified as persons with knowledge of relevant facts in Lawrence's disclosure. *Id.* App. 2,4, 6; *see also* FED. R. CIV. P. 37(c)(1). And while Lawrence admits that she did not disclose that Blackshear and Gonzalez were potential witnesses, the Court finds that this failure to disclose was harmless. Defendants first provided evidence related to Blackshear and Gonzales in their motion for summary judgment; allowing this testimony in would not prejudice Defendants. *See United States v. Grigsby*, 86 F.4th 602, 615 (5th Cir. 2023) (holding that it is within the court's discretion to permit admittance of untimely information into evidence if the failure to disclose was harmless).

Additionally, the Court finds that Defendants' general objections to these declarations on hearsay and personal knowledge grounds are insufficient to warrant relief. It is the objecting party's obligation to identify which statements are objected to and must be struck. Defendants fail to do so here. *See Forbus v. Andrews Distrib. Co. of N. Tex., Ltd.*, 2005 WL 3637041, *3 (N.D. Tex. 2005) ("The Court is not required to comb through each affidavit and isolate what it believes [Plaintiff] is objecting to."). Similarly, Defendants make the same conclusory statement that these declarations lack personal

knowledge "[t]o the extent the . . . declarations describe the District's reasons for personnel decisions or the circumstances of other coaches' departures . . . ." Defs.' Mot. to Strike 10. Because Defendants fail to identify which portion of the declaration they are referring to, the Court declines to strike the declarations of Blackshear, Gonzales, Woodard, and Jordan on these grounds.

## III. SUMMARY JUDGMENT LEGAL STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25.

Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Bargher v. White*, 928 F.3d 439, 444 (5th Cir. 2019) (citation omitted). Factual controversies are resolved in favor of the nonmoving party "only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (citing *McCallum Highlands, Ltd. v. Wash. Cap. Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

## IV. The Court Grants Defendants' Motion for Summary Judgment on Lawrence's Section 1983 Equal Protection Claim

Lawrence asserts that Defendants King, Childress, and Kirkpatrick, in their individual capacities acting under color of law, deprived her of "equal terms, conditions and privileges of employment in her role as Girls' Athletic Coordinator and Head Coach for Girls' Varsity Basketball because of her race and protected free speech activities opposing race discrimination." Pl.'s Third Am. Compl. ¶¶ 147, 158, 169 [32]. Specifically, Lawrence alleges that these Defendants, in their individual capacity, violated Lawrence's right to Equal Protection. "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotation marks and citations omitted).

To state a section 1983 claim, "a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). "In order to state a cause of action under § 1983, [the plaintiff] must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999).

### *A. There Is No Evidence that King or Childress Had a Role In or Causal Connection to Lawrence's Reassignment*

The Court concludes that Defendants are entitled to summary judgment on Lawrence's Equal Protection claim under section 1983 because Lawrence has not presented evidence that both King and Childress's actions played a role in her reassignment, that they treated Lawrence "differently than similarly situated individuals," and that the manner they treated or interacted with Lawrence stemmed from a "discriminatory intent or purpose."

A section 1983 claim of discrimination under the Equal Protection Clause requires the plaintiff to show that "a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999) (quoting *Johnson v. Morel*, 876 F.2d 477, 479 (5th Cir. 1989)). "Proof of racially discriminatory intent or purpose is required to show violation of the Equal

Protection Clause." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977).

In the instant case, Lawrence concedes that neither King nor Childress were the decisionmaker behind her reassignment. Pl.'s Resp. MSJ 28. Rather, Lawrence argues that these two Board members "influenced" this decision. *Id.* Yet, Lawrence fails to put forth specific facts which show the existence of a genuine issue concerning whether King and Childress intentionally influenced the decision to reassign Lawrence because of a discriminatory purpose.

As to Defendant King, Lawrence claims that King's discriminatory intent and influence is clear because in 2019 King questioned the appropriateness of hiring Lawrence because of her race. Pl.'s Resp. MSJ 30; *id.* App. 121. This lone, five-year-old remark is insufficient to create a genuine issue of fact. Additionally, Lawrence fails to point towards another employee that King treated differently. Considering the summary judgment evidence that shows King took no action affecting Lawrence's employment, suggested racial issue training upon Lawrence's concern, Def.'s MSJ App. 78, and did not communicate with the decisionmaker Fitzpatrick on Lawrence's employment after the hiring stage, *id.* 42, the Court finds that Defendants have met their burden to show the absence of evidence supporting Lawrence's case. Absent any more evidence of King's influence on the reassignment decision or discriminatory intent, Defendants are entitled to summary judgment on Lawrence's equal protection claim as to Defendant King.

In a similar vein, Lawrence fails to show a genuine issue of fact as to whether Defendant Childress intentionally discriminated against Lawrence because of her race.

Lawrence points to the fact that Childress gave Lawrence's supervisor, Athletic Director Jerri Hall, a book titled "The Black Friend: On Being a Better White Person," and suggested that Hall work with Lawrence to address the racial issues within CISD's athletic department. Pl.'s Resp. MSJ 31; *id.* App. 127. Additionally, when Kirkpatrick was hired as superintendent, Childress mentioned to him that Lawrence would be interested in meeting with him about the issues she raised regarding discrimination within CISD. Pl.'s Resp. MSJ 30; *id.* App. 59. This specific summary judgment evidence, viewed in the light most favorable to the nonmoving party, is insufficient to show a genuine issue for trial. The record demonstrates that Childress had no hand in the decision to reassign Lawrence, Defs.' MSJ App. 93, displayed no discriminatory animus towards Lawrence, and was in fact in full support of holding training in response to Lawrence's racial concerns. *Id.* 93, 96. Because there is no evidence that would allow a reasonable jury to find that Lawrence intentionally influenced the decision to reassign Lawrence because of her race, the Court finds that Defendants are entitled to summary judgment on Lawrence's equal protection claim as to Defendant King.

### *B. Defendants Are Entitled to Summary Judgment on the Equal Protection Claim Against Superintendent Kirkpatrick*

Superintendent Kirkpatrick is entitled to summary judgment on Lawrence's section 1983 Equal Protection claim because Lawrence has not presented sufficient evidence of disparate treatment or discriminatory intent. "To state a claim of racial discrimination under the Equal Protection Clause and section 1983, the plaintiff 'must allege and prove that [she] received treatment different from that received by similarly situated individuals

and that the unequal treatment stemmed from a discriminatory intent.'" *Priester v. Lowndes Cty.*, 354 F.3d 414, 424 (5th Cir. 2004) (quoting *Taylor v. Johnson,* 257 F.3d 470, 473 (5th Cir. 2001)). It is undisputed that Superintendent Kirkpatrick was the decisionmaker behind Lawrence's reassignment. Lawrence argues that the record establishes that Kirkpatrick treated her differently from similarly situated individuals, particularly Coach Taylor, a white baseball coach. Pl.'s Resp. MSJ 32–33, 36–38. Specifically, Lawrence points to the fact that Kirkpatrick allegedly did not require compliance with the chain of command policy for parent complaints against Coach Taylor while compliance was required for complaints regarding Lawrence, a Black female coach, and Coach Gonzales, a Hispanic female coach. *Id.* at 37; *id.* App. 33–34, 76–82. Aside from receiving different treatment regarding reporting protocol, Lawrence argues that while Coach Taylor was found to have made racially and sexually offensive comments, he was not removed from his position. *Id.* App. 121–22, 124, 143–45.

Lawrence does not present sufficient summary judgment evidence to show that she was treated differently than similarly situated persons. Fifth Circuit precedent "require[s] that an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken 'under nearly identical circumstances.'" *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (quoting *Little v. Republic Refin. Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991)). Nearly identical circumstances means the same job or responsibilities, same supervisors, comparable violation histories, and most importantly, "the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar

employment decisions." *Id.* Here, while Lawrence and her main, white male comparator, Coach Taylor, held similar job titles as varsity sports head coaches, they were accused of categorically different conduct: Coach Taylor was accused of racial and sexual misconduct while Lawrence's reassignment was driven by poor program performance and participation deficiencies. *See* Defs.' MSJ App. 39, 166–73. And for those coaches that had similar performance deficiencies, the record demonstrates that Kirkpatrick evaluated their employment similarly, regardless of race or gender. *See id.* App. 37–38, 43–50. Accordingly, Lawrence fails to establish a genuine dispute of material fact as to whether she and her other colleagues were similarly situated.

Even if Taylor were a sufficient similarly situated comparator, to establish discriminatory intent, a plaintiff must also show "that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group." *Priester*, 354 F.3d at 424 (quoting *Taylor,* 257 F.3d at 473). "Allegations [of discriminatory intent] that are merely conclusory, without reference to specific facts, will not suffice." *Id.* In an attempt to demonstrate a material fact issue as to whether Kirkpatrick acted with discriminatory intent, Lawrence points to differing treatment of her and employees of other races and gender and the fact that concerns about her coaching performance were not documented until the month before her reassignment. *See* Pl.'s Resp. MSJ 37–38; *id.* App. 81–84, 121–26, 174, 209. However, this evidence submitted by Lawrence as probative of discriminatory intent is, in fact, simply evidence of disparate treatment. *See Pugh v. Byrd*, 574 F. App'x. 505, 510 (5th Cir. 2014) (unpublished) (holding that an argument of

disparate treatment is "conclusory and is insufficient to satisfy [the] burden of demonstrating a genuine issue of material fact regarding discriminatory intent and to rebut the Defendants' assertion in their motion for summary judgment that the Plaintiffs lacked evidence of discriminatory intent"); *see also Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) ("Management does not have to make proper decisions, only non-discriminatory ones."). Without more, Lawrence has not submitted sufficient evidence to demonstrate a genuine issue of material fact as to whether Kirkpatrick acted with discriminatory intent or any other impermissible motive. Therefore, the Court grants summary judgment in favor of Defendant Kirkpatrick on Lawrence's Equal Protection claim.

## V. The Court Grants Defendants' Motion for Summary Judgment on Lawrence's Section 1983 First Amendment Claim

Lawrence alleges that Defendants King, Childress, and Kirkpatrick, in their individual capacities acting under color of law, "intentionally retaliated against Lawrence because of her protected free-speech activities opposing race discrimination." Pl.'s Third Am. Compl. ¶¶ 150, 161, 172. In the Spring of 2022, Lawrence spoke to multiple people within CISD about disparate treatment between employees of different races as well as racially and sexually offensive comments directed towards CISD students. *See* Pl.'s Resp. MSJ. App. 53–55, 66–67, 96–98, 102–03, 112. She additionally created a PowerPoint presentation to educate CISD staff and community on racial and cultural differences. *Id.* 185–95. After Lawrence met with CISD administrators multiple times, the District held a cultural awareness training in the Fall of 2022. *Id.* 56. Lawrence again raised concerns

about racial issues within the District after the "training did not address the racial problems that CISD had been experiencing and about which Lawrence had specifically called out and on which Lawrence had requested training." Pl.'s Resp. MSJ 15; *see also id.* App. 57. Lawrence argues that it was these complaints that prompted Defendants to reassign her.

"To prevail on a First Amendment employment retaliation claim, an employee must establish four elements: (1) he suffered an adverse employment action; (2) his speech involved a matter of public concern; (3) his interest in commenting on matters of public concern outweighs the employer's interest in promoting efficiency; and (4) his speech motivated the employer's adverse employment action." *Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 184 (5th Cir. 2005). Lawrence suffered an adverse employment action by being reassigned to a new position. *See Hamilton v. Dallas Cnty.,* 79 F.4th 494, 501 (5th Cir. 2023) (en banc) ("Title VII plaintiff may recover damages even for "discrimination in the 'terms, conditions, or privileges of employment' " that "did not involve a discharge," "loss of pay," or other "concrete effect on [his or her] employment status.") (quoting *Landgraf v. USI Film Prod.*, 511 U.S. 244, 254 (1994)); *Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999) ("To be equivalent to a demotion, a transfer need not result in a decrease in pay, title, or grade; it can be a demotion if the new position proves objectively worse—such as being less prestigious or less interesting or providing less room for advancement."). Here, Lawrence was reassigned to a position of lesser authority and was given a pay cut via denied access to stipends. Pl.'s Resp. MSJ App. 138–40. Having found that Lawrence suffered an adverse employment action, the Court turns to the other factors considered in a First Amendment retaliation claim.

The parties dispute whether Lawrence spoke as a citizen on a matter of public concern. Speech made pursuant to a public employee's official duties is generally not protected. *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). However, "[t]o hold that any employee's speech is not protected merely because it concerns facts that he happened to learn while at work would severely undercut First Amendment rights." *Charles v. Grief*, 522 F.3d 508, 513 (5th Cir. 2008). Although part of Lawrence's speech was to her supervisors, namely the administration and Board of Trustees, her duties as a basketball coach or athletic director did not require her to raise complaints about sensitive racial issues within CISD. *See Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 694 (5th Cir. 2007) (concluding that the athletic director's speech concerned the fulfillment of his daily operations, namely budgeting for various athletic department expenses); *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 224 (5th Cir. 1999) ("While employee speech cases are a likely vehicle for varied fact scenarios, the law is clearly established that a mix of public and private speech may be constitutionally protected.") (internal quotation marks omitted). Because there are other fatal defects in Lawrence's claim, the Court will assume that Lawrence has raised a fact issue as to whether she engaged in protected speech.

Regardless of whether Lawrence's speech involved a matter of public concern, her First Amendment claim fails because she cannot raise a genuine issue of fact regarding whether her speech motivated Defendants to reassign her. To prevail on her section 1983 retaliation claim, Lawrence must prove that her speech was a substantial or motivating factor in her reassignment. *See Bd. of Cnty. Comm'rs. v. Umbehr*, 518 U.S. 668, 675 (1996). In support of her assertion that the identified speech was a substantial factor in her

reassignment, Lawrence argues that up until the month before her reassignment, she received no indication that her performance was less than satisfactory, and yet once Kirkpatrick learned about her "concerns about race," she was reassigned. Pl.'s Resp. MSJ App. 132–37, 205.

While "[c]lose timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation," *Swanson v. Gen. Servs. Admin.,* 110 F.3d 1180, 1188 (5th Cir. 1997) (internal quotation marks omitted), where a plaintiff seeks to rely on "mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case," the "temporal proximity must be 'very close.'" *Ajao v. Bed Bath & Beyond, Inc.*, 265 F. App'x 258, 264 (5th Cir. 2007) (unpublished) (quoting *Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268, 273–74 (2001)). Here, Lawrence relies mainly on temporal proximity to support her prima facie case. Yet the record demonstrates that Kirkpatrick became Superintendent in July 2023 and testified that, until Lawrence's EEOC charge appeared after the reassignment, he did not know she had ever complained of race or that any training responsive to her concerns had occurred. Defs.' MSJ App. 33–24, 42.

While Lawrence offers contrary evidence that Board Member Childress mentioned Lawrence's concerns about race upon her hiring, this is only awareness of a general concern rather than proof that it was a motivating factor in her reassignment. *See* Pl.'s Resp. MSJ App. 59; *see also Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996) ("[M]ere conclusory allegations are not competent summary judgment evidence, and such

allegations are insufficient, therefore, to defeat a motion for summary judgment."). Without providing more evidence than timing of reassignment and conclusory allegations, Lawrence is unable to raise a fact issue regarding whether her reassignment was motivated by her speech. Additionally, as discussed before, there is no evidence that either Defendant King or Childress influenced the decision to reassign Lawrence. Therefore, the Court grants summary judgment in favor of King, Childress, and Kirkpatrick as to Lawrence's First Amendment retaliation claim.

## VI. THE COURT GRANTS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON LAWRENCE'S TITLE VII CLAIMS

Lawrence brings claims of race and gender discrimination and retaliation against CISD under Title VII. The Court concludes that Defendants are entitled to summary judgment on these claims because there is not a genuine dispute of fact.

### *A. Lawrence Has Not Established Her Title VII Race and Gender Discrimination Claims*

Title VII makes it unlawful for "an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "'Direct evidence of discriminatory intent is rare.' So an employee usually 'proves their claim through circumstantial evidence.'" *Bravo v. Dallas Indep. Sch. Dist.*, 177 F.4th 604, 606 (5th Cir. 2026) (internal citation omitted) (quoting *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 997 (5th Cir. 2002)). Claims of unlawful discrimination under Title VII based on circumstantial evidence, as here, are evaluated under the burden-shifting framework articulated in

*McDonnell Douglas Corp. v. Green*. 411 U.S. 792 (1973); *see Harrison v. Brookhaven Sch. Dist.*, 82 F.4th 427, 429 (5th Cir. 2023).

Under *McDonnell Douglas*, Lawrence bears the initial burden of establishing prima facie cases of discrimination and retaliation. *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). Once accomplished, the burden to produce — but not persuade — shifts to Defendants, who must provide a nondiscriminatory, nonretaliatory explanation for her reassignment. *Id.* The burden then shifts back to Lawrence to raise "a genuine issue of material fact that either (1) the employer's reason is a pretext or (2) that the employer's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is [her] protected characteristic." *Id.* at 412. The "burden of persuasion remains with the employee throughout." *Saketkoo*, 31 F.4th at 1000.

To establish a prima facie case of discrimination, Lawrence must show that she "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside [her] protected group or was treated less favorably than other similarly situated employees outside the protected group." *Harrison* 82 F.4th at 429 (citations omitted). In this case, the fourth element is mainly contested[1]–that Lawrence was treated less favorably than other similarly situated employees. As discussed earlier, Lawrence points to several CISD employees who she argues are similarly situated

[1] While Defendants contest element three, the Court found that Lawrence has presented sufficient summary judgment evidence to demonstrate that she suffered an adverse employment action. *See supra* Section (V).

individuals who were treated more favorably and not reassigned. Pl.'s Resp. MSJ 32–33, 36–38. While the comparators offered are likely insufficient for various reasons, such as being accused of categorically different conduct and not having the same performance issues,[2] the Court does not need to address this element in depth because Lawrence ultimately fails to put forth evidence that CISD's nondiscriminatory reason for her reassignment was mere pretext.

CISD has provided a legitimate, nondiscriminatory reason for Lawrence's reassignment: she was reassigned because of low participation numbers, parent complaints, and poor program strength. Defs.' MSJ 30. As the Girls Varsity Basketball Coach, Lawrence's team finished 5-20 (1-13 in district) in the 2022-2023 school year and 16-18 (7-7 in district) in the 2023-2024 school year. *Id.* App. 166–74. Both years her roster numbers declined and was unable to field a ninth-grade team. *Id.* The Court holds that this is a legitimate, nondiscriminatory and nonretaliatory reason for Lawrence's reassignment. *See, e.g., Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 233 (5th Cir. 2015) ("We have repeatedly held that a charge of 'poor work performance' is adequate when coupled with specific examples.").

Lawrence argues that CISD's articulated reason for her reassignment is pretextual. Pl.'s Resp. MSJ 36. A plaintiff may show pretext either (1) "through evidence of disparate treatment" or (2) "by showing that [CISD's] proffered explanation is false or unworthy of credence." *Jackson v. Cal-Western. Packaging Corp.*, 602 F.3d 374, 378–79 (5th Cir.

[2] For a discussion of these comparators and why they are likely insufficient to establish a discrimination claim, see *supra* Section (IV)(B).

2010) (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)). "'An explanation is false or unworthy of credence,' and thus pretextual, 'if it is not the real reason for the adverse employment action.'" *Burton*, 798 F.3d at 233 (quoting *Laxton*, 333 F.3d at 578). After reviewing the evidence, the Court determines that Lawrence has failed to show pretext.

Regarding pretext in the discrimination context, Lawrence points first to disparate treatment by referring the Court to evidence in the record, but the cited evidence fails to show instances where CISD treated Lawrence more harshly than other "similarly situated" employees for "nearly identical" conduct. *See Lee*, 574 F.3d at 260. As discussed earlier, the summary judgment evidence does not support Lawrence's proposed comparators and instead demonstrates that coaches with similar performance issues received similar treatment. *See* Defs.' MSJ App. 37–39, 43–50, 166–73.

Lawrence also attempts to attack the legitimacy of her reassignment by offering evidence of prior positive evaluations and inconsistent application of the District's "chain of command" policy. Pl.'s Resp. MSJ 30–33. While Lawrence did receive a positive evaluation from Athletic Director Hestand two weeks prior to her reassignment, the evaluation focused more on adherence to procedure rather than in-game coaching performance, and Hestand played no role in Lawrence's reassignment nor knew about the substance of the parents' complaints concerning Lawrence. *See id.* App. 79–81, 132–37. And while it may be true that chain of command policy was not followed consistently regarding parental complaints, the Court is not convinced that this is sufficient evidence of pretext when the District's decision to reassign Lawrence additionally rested upon her poor

coaching record and dwindling participation rates. Accordingly, the Court grants summary judgment to Defendants on Lawrence's race and gender discrimination claims.

### *B. Lawrence Has Not Established Her Title VII Retaliation Claim*

Finally, Lawrence brings a Title VII retaliation claim against CISD, claiming that she suffered an adverse employment action after opposing illegal discriminatory conduct in the workplace. Pl.'s Third Am. Compl. ¶ 138. Title VII "prohibits an employer from 'discriminat[ing] against' an employee or job applicant because that individual 'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006) (alteration in original) (quoting 42 U.S.C. § 2000e-3(a)). When a claim for retaliation is based on circumstantial evidence, as is here, the *McDonell Douglas* burden-shifting framework applies. *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020). "Under this framework, the plaintiff has the burden to prove a prima facie case of retaliation by showing (1) she engaged in a protected activity; (2) she 'suffered an adverse employment action'; and (3) 'a causal connection exists between the protected activity and the adverse employment action.'" *Id.* (quoting *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000)). Defendants argue that this claim fails on elements one and three, i.e., that Lawrence did not engage in protected activity and cannot establish causation between any activity and her reassignment. Defs.' MSJ 32–34. The Court finds that even if Lawrence engaged in protected activity, she cannot establish the causation element.

"Protected activity is defined as opposition to any practice rendered unlawful by Title VII . . . ." *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) (internal quotation marks omitted). "To satisfy this opposition requirement, [a plaintiff] need only show that she had a reasonable belief that the employer was engaged in unlawful employment practices." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007) (internal citation omitted). Lawrence states she engaged in protected activity twice. First, she claims she engaged in protected activity when she raised concerns about racially disparate treatment of CISD employees, specifically a black male teacher being placed on administrative leave pending an investigation. Pl.'s Resp. MSJ App. 122. There are no records of white employees who were also accused of misconduct being placed on leave. *Id.* App. 36–39, 113. Additionally, Lawrence created a PowerPoint presentation for staff about racial and cultural differences to address the race-related problems within the District. Pl.'s Resp. MSJ 14–15. The Court assumes for the purposes of this Order that Lawrence has presented sufficient evidence to demonstrate that she engaged in a protected activity.

While Lawrence may be able to sufficiently demonstrate that she engaged in a protected activity for the purpose of Title VII, the record fails to establish causation. A plaintiff establishes a causal link in a Title VII retaliation claim when the evidence shows that the employer's adverse employment decision was based in part upon knowledge of the employee engaging in protected activity. *Medina v. Ramsey Steel Co.,* 238 F.3d 674, 684 (5th Cir. 2001). At the prima facie stage, "a plaintiff can establish causation by showing a temporal proximity between the protected activity and the adverse employment action

alone." *Brown*, 969 F.3d at 578. Lawrence attempts to establish the third element of the prima facie case by alleging she engaged in protected activity for which she was subsequently reassigned. However, "the mere fact that some adverse action is taken *after* an employee engages in some protected activity will not *always* be enough for a *prima facie* case." *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002) (emphasis in original) (quoting *Swanson*, 110 F.3d at 1188 n.3). Rather, the temporal proximity must be "very close" to show causation on this element alone. *Clark Cty.*, 532 U.S. at 273–74 (holding that an adverse employment action taken twenty months after a protected activity "suggests, by itself, no causality at all"). That close relationship has not been demonstrated here.

Lawrence relies on a two-year temporal proximity to support her prima facie case, i.e., her complaints about racial conduct beginning in 2022 and her reassignment in 2024. Pl.'s Resp. MSJ 8, 13–18. Because two years is not close enough without other evidence of retaliation, Lawrence must present other evidence to establish causation. *See Raggs*, 278 F.3d at 354 (holding that a five-month lapse is not close enough to establish causation absent additional evidence of retaliation). Lawrence fails to do so. The record shows that upon becoming Superintendent in 2023, Kirkpatrick was unaware of any of Lawrence's protected activity until her EEOC charge arose after the reassignment. Defs.' MSJ App. 33–24, 42; *see Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 883 n.6 (5th Cir. 2003) ("If the decisionmakers were completely unaware of the plaintiff's protected activity, then it could not be said (even as an initial matter) that the decisionmakers might have been retaliating against the plaintiff for having engaged in that activity."). While Lawrence

offers evidence that Board Member Childress mentioned Lawrence's concerns about race upon her hiring, this is only awareness of a general concern rather than proof that it was a motivating factor in her reassignment. *See* Pl.'s Resp. MSJ App. 59; *see also Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996) ("[M]ere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment."). Without providing more evidence than timing of reassignment alone and conclusory allegations, Lawrence is unable to establish a prima facie case of retaliation under Title VII. Accordingly, the Court grants summary judgment in favor of Defendants on Lawrence's Title VII retaliation claim.

## CONCLUSION

For reasons explained above, the Court grants in part and denies in part Defendants' motion to strike Plaintiff's summary judgment evidence. Additionally, because Defendants have shown that there is no genuine dispute of material fact as to all of Lawrence's claims, the Court grants Defendants' motion for summary judgment.

Signed November 18, 2026.

David C. Godbey
Senior United States District Judge